UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REGINALD DARNELL PORTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONSTAR MORTGAGE, LLC, *et al.*, ) <br> ) <br> Defendants. ) | Cause No. 2:24-CV-044-PPS-JEM |

## **OPINION AND ORDER**

Reginald Darnell Porter, proceeding *pro se*, filed a civil complaint and a motion for leave to proceed in forma pauperis. [DE 1; DE 2.] Because Porter is trying to file this case free of charge, I must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). Section 1915(e)(2)(B) applies to prisoner and non-prisoner complaints alike, regardless of fee status. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). A document filed pro se is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Under Rule 8(a)(2), Porter is required to provide a short and plain statement that plausibly demonstrates he is entitled to relief from the defendants. He's filed suit against seven defendants: Nationstar Mortgage, LLC, Reisenfeld & Associates, LLC, and five attorneys who apparently work there – Mathew Gladwell, Aaron Cole,

Christopher Arlinghaus, Aaron Rodgers, and Gregory Stout. He asserts claims for "wrongful foreclosure," violations of the Fair Debt Collection Practices Act (FDCPA) and Truth in Lending Act (TILA), breach of contract, "violation of federal trust and lien laws," intentional infliction of emotional distress, and two claims styled as "slander of title" and "slander of credit." [DE 1 at 2–3.] As relief, Porter seeks $10 million in damages and "the attorney's assets." *Id.* at 4. In support of his sprawling claims, Porter attaches to his *pro se* complaint form a statement of facts and two exhibits. [*Id.* at 4–23; DE 1-1; DE 1-2.]

Porter's statement of the facts forming the basis of his legal claims is a blunderbuss. It spans twenty-one separate sections that are difficult to follow and hard to piece together in isolation. Initially, most of Porter's claims sound in state law. He does not provide any allegations as to the citizenship of the defendants for purposes of diversity jurisdiction. He specifically invokes federal question jurisdiction in connection with his FDCPA claim. [DE 1 at 18.] Otherwise, he tells me that I have jurisdiction to hear the case under "common law" and "admiralty jurisdiction." *Id.* at 9–10. Neither forms a basis for subject matter jurisdiction in this case.

Porter does not say so in the complaint, but I assume that he takes the view that his collection of state law claims may proceed in federal court, along with the federal law claims, pursuant to the Court's supplemental jurisdiction. Viewing the complaint in the light most favorable to Porter, I will accept that I have jurisdiction to consider all of his claims, notwithstanding the fact that he has not explicitly alleged that the Court has

2

supplemental jurisdiction to consider the state law claims. I will note that gives the complaint an exceedingly generous reading.

The core of Porter's case is that he lost his home in a foreclosure proceeding in Lake Superior Court. In February 2009, Porter purchased a home and obtained a mortgage from Countrywide Bank Corporation in the sum of $66,565. [DE 1 at 14.] He claims that under this "alleged loan," he made monthly payments of approximately $750 from December 2009 until January 2019 to Countrywide and "then to Bank of America." *Id.* at 17. In "late 2019," Nationstar Mortgage "claimed [Porter] was behind on payments and hired foreclosure attorneys Reisenfeld & Associates LLC to commence foreclosure" on Porter's home. *Id.* In 2023, he claims a "Notice of Default" was issued and signed by the attorneys working for Nationstar and a few days later a "Notice of Trustee Sale" scheduled a foreclosure auction on February 12, 2024. *Id.* Nationstar and/or its foreclosure counsel then allegedly transmitted unspecified information about Porter to various credit reporting agencies, including Equifax. *Id.*

Porter makes some additional claims about the loan he obtained. He claims that an unnamed "bank," which I assume refers to Countrywide, advertised that they loan money and he applied for a loan. *Id.* at 5. The bank allegedly "refused" to loan him money to "fund the alleged bank loan check" and "misrepresented the elements of the alleged agreement." *Id.* Porter states that there is a "promissory note" with his "name on it," which obligates him to pay $66,565, plus interest, and the bank "recorded the forged promissory note as a loan from [Porter] to the bank." *Id.* Porter further claims the

3

bank refused to loan him additional money to repay "the unauthorized loan" it had recorded, then "changed the cost and the risk of the alleged loan." *Id.*

For all of the legal labels Porter puts on the "alleged loan," it appears he simply went to a bank and obtained a mortgage and a loan to finance a home purchase. A mortgage is a legal document that ties or 'secures' a piece of real estate (here, Porter's house) to an obligation to repay money. Instead of receiving "legal tender or other depositors' money," Porter received a "promissory note" obligating him to repay $66,565, plus interest. The note was secured by the mortgage, so if Porter did not satisfy his obligations under the note, the bank (or its assignee) could invoke its right under the mortgage to obtain the property in a foreclosure proceeding. Nevertheless, Porter confusingly asserts that "[t]he original debt was actually zero because [his] financial assets were exchanged for FED's promissory notes in an even exchange." [DE 1 at 14.] That makes no sense, because Porter specifically alleges that he made monthly payments. Those monthly payments were presumably on the loan he obtained, which was secured by the mortgage, given he claims the payments were made to Countrywide and then another bank through at least January 2019. *See id.* at 17.

Porter then tells me that "the attorney" (he doesn't say who) "illegally signed the notice of default letter to initiate the foreclosure on behalf of the trustee without legal authority," and points to the fact that "the attorney who initiated the non-judicial foreclosure did not have standing" as a "fatal flaw" in the foreclosure process. *Id.* at 4. That's the basis for his claim against Reisenfeld & Associates and the five attorneys. On

4

first pass, these statements are nothing more than a series of legal conclusions without any factual content tying the firm or the individual defendants to anything having to do with the apparent foreclosure of Porter's home.

Helpfully, Porter points me to a case in Lake Superior Court (Cause No. 45D-01-2308-MF-000440), an *in rem* action filed by Nationstar against Porter on August 9, 2023. The state court record provides some more context on the foreclosure proceeding.[1] [DE 1 at 9.] Information in the state court docket reflects that Porter's claims are flimsy at best.

In that case, Nationstar asserted that Porter owned a home at 609 South Wayne Street in Gary, and on February 26, 2009, he executed and delivered a mortgage to secure a home loan in the principal sum of $66,565. Bank of America assigned the note to Nationstar on July 17, 2013. Nationstar determined that Porter was in default of the payment due January 1, 2022, with an outstanding principal balance of $8,173.90 owing on the note, and that Porter was "immune from personal liability on said Note" due to a bankruptcy case in this district. *See generally* Cause No. 2:12-BK-20728. It further noted that Porter and various of his creditors, including Barclays Bank Delaware and the State of Indiana, may claim an interest in the property. Nationstar thus sought an *in rem* judgment against the property in the sum of the outstanding principal balance on the

---

[1] I can take judicial notice of documents filed in the state court record. *Patrick v. City of Chicago*, 81 F.4th 730, 733 n.2 (7th Cir. 2023). *See, e.g.*, *Cerda v. Wills*, 2023 WL 8661640, at *5 n.2 (N.D. Ill. Dec. 8, 2023). The state court record is accessible online at https://public.courts.in.gov/mycase/#/vw/Search.

5

note, plus interest and any and all deferred amounts owed. [*See* Complaint and Exh. A–E, Cause No. 45D-01-2308-MF-000440.]

The case remained pending for several months as the parties made various filings, including motions to dismiss and stay the case that Porter filed in October and November 2023 and the court denied on November 16, 2023. In a similar thread to the complaint before me, Porter's motion to dismiss the case stated, among other things, that he had never received any "note or instrument of monetary value" from the law firm Nationstar hired for the foreclosure proceedings. He then proceeded to cite a Congressional declaration that the Bible is "THE WORD OF GOD," several provisions with citations from various books in the Bible, such as "ALL ARE EQUAL UNDER THE LAW," "IN COMMERCE TRUTH IS SOVEREIGN," and "NO ONE IS ABOVE THE LAW," and stated several other "Legal Maxim[s]" without any citations. Porter's motion to stay introduced himself as "The Living Man," or "Libellant" (I don't know what that means), and took issue with the action because the alleged debt "has not been validated" and he was "never served with a summons by the Sheriff."

Unsurprisingly, none of those arguments convinced the court to toss Nationstar's case. On February 8, 2024, Judge John Sedia granted Nationstar's motion for summary judgment and entered a decree of foreclosure on the mortgage. The court determined that Nationstar's allegations "are true," and summarized the amounts owing on the note – totaling $15,080.14, plus interest at the rate of 5.125% from October 31, 2023 to the date of the judgment. The court made additional findings that the note was secured by a

6

mortgage held by Nationstar, which aside from property taxes or assessments, was a valid and first lien upon the property, and that the conditions of the mortgage were broken. Accordingly, Nationstar was entitled to a finding of default on the note and mortgage and an *in rem* judgment against the subject property in the sum of $15,080.14, plus interest, as well as a decree of foreclosure on the mortgage, and the property would be sold by the County Sheriff to satisfy the amounts found due to Nationstar.

Contrary to Porter's conclusory statements, the foreclosure of his home does not appear to have been a "non-judicial" process in any sense whatsoever. [*See, e.g.*, DE 1 at 7.] Rather, Nationstar went into state court, provided evidence that the conditions of Porter's mortgage had been broken and it was entitled to judgment on the associated loan. The court evaluated the evidence presented and granted Nationstar summary judgment on its claim and issued a decree of foreclosure on the property. As I noted above, Porter seems to take issue with the whole foreclosure process, claiming (among other things) that an "Affidavit of Indebtedness" filed December 20, 2023 on the state court docket [*see* DE 1-1] reflects that the foreclosure action was "initiated by a party without standing." [DE 1 at 8.] He asserts that "un-licensed attorneys filed a defective affidavit with no firsthand fact witness" in a scheme to "deceive the court." *Id.* at 7. Those are bold claims, but they simply have no basis in fact.

Indeed, the affidavit Porter attaches to his complaint reflect as much. [*See* DE 1-1.] The affidavit is signed by Minh Nghiem, a document execution associate at Nationstar, who stated under oath that Nationstar maintains records for the loan that is

7

secured by the mortgage Nationstar sought to foreclose on, and that Nghiem was familiar with the type of records Nationstar maintains in connection with the loan. *Id.* at 1. Based on Nghiem's personal knowledge of Nationstar's business records, he stated that Porter had defaulted on the loan payments and Nationstar's records showed amounts due through October 31, 2023 are due and unpaid, including principal amounts totaling $8,173.90, interest totaling $802.93 from December 1, 2021 to October 31, 2023 at 5.125%, and additional sums bringing the total to $11,423.64. *Id.* at 2. The affidavit attached several documents supporting these conclusions, including the promissory note, mortgage, assignment chain for the mortgages, Porter's account history, and a demand letter. *See id.*

The nature of Porter's complaint suggests that he may be seeking this court's review of the state court's foreclosure order. He specifically asserts that "judgment should be" in his favor, because an "attorney who initiated the non-judicial foreclosure did not have standing" and that "robbed the State Court of jurisdiction" to grant the foreclosure. [DE 1 at 4.] If that's the purpose of his lawsuit, it is likely that I have no jurisdiction. A pair of Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), yield what is called the *Rooker-Feldman* doctrine, namely "that the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). The *Rooker-Feldman* doctrine prohibits a federal court from overturning a state

8

court's judgment, and applies when the state court judgment "is the source of the injury of which plaintiffs complain." *Id*. The circuit has explained that the "vital question" in applying *Rooker-Feldman* concerns "whether the federal plaintiff seeks the alteration of a state court's judgment." *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018). "The *Rooker-Feldman* doctrine divests all federal courts except the Supreme Court of subject-matter jurisdiction to adjudicate suits by plaintiffs who effectively seek review of an adverse state-court judgment." *Abatangelo v. Wells Fargo Bank, N.A.*, 719 Fed. App'x 520, 522 (7th Cir. 2017) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015)). So, to the extent Porter wants me to review the state court's order granting Nationstar's motion for summary judgment and issuing the decree of foreclosure on his home, such a claim runs headlong into *Rooker-Feldman* and I lack jurisdiction to consider the claim.

Setting that issue aside for present purposes, I still struggle to piece together how Porter has a plausible claim against any of the named defendants, in light of the whirlwind of facts appended to his complaint. As to Reisenfeld & Associates and the five individual defendants, Porter does not make any specific allegations about what any of the attorneys did to harm him. He just groups them all together and assigns them liability because they worked for Nationstar on the foreclosure case, which involved the filing of an affidavit by a non-attorney. That is simply not enough to make out a claim against the law firm or individual defendants Gladwell, Cole, Arlinghaus, Rodgers, or Stout. It should be added that the filing of affidavits like the one before me

9

is not at all uncommon in litigation; the vast majority of affidavits are submitted by non-attorney witnesses to attest to facts that are discernible in business records and the like. I have substantial doubts that the filing of the affidavit is actionable in any way. More generally, in view of the state court record, it appears highly unlikely that anything these parties did in the course of the foreclosure action forms a basis for a colorable legal claim against them. But as it stands, the complaint is devoid of factual details needed to make that assessment.

As to Porter's claims against Nationstar, he suggests that the bank that originated the loan (*not* Nationstar) failed to make various disclosures and essentially defrauded him at the time he obtained the loan in 2009. There's no suggestion that Nationstar had anything to do with that transaction; Bank of America assigned the mortgage to Nationstar in 2013. Porter does not have a claim against Nationstar based on a transaction Nationstar had no role in executing. The balance of the claims against Nationstar are based on the same theory discussed above – *i.e.*, that the foreclosure proceeding was somehow "non-judicial" and Nationstar violated federal debt collection and lending laws (and various other provisions of state law) by seeking to foreclose on the mortgage and filing an affidavit of indebtedness reflecting information in its business records. In sum, based on the scattershot pleading before me, I cannot say that Porter makes out a colorable claim against Nationstar, either.

I am sympathetic to Porter's distress over losing his home. Foreclosure proceedings are an unpleasant affair. But to proceed against Nationstar, the law firm

10

that filed the foreclosure action on its behalf, and five attorneys who apparently work there, Porter must come forth with a short and plain statement of the facts forming the basis for his legal claims. Under Rule 8(a)(2), is not enough to list elements of claims [*e.g.*, DE 1 at 13] and various legal conclusions [*e.g.*, *id.* at 12 ("The attorney is in violation of the FDCPA, as they do not have a licenses [*sic*] to collect a debt, . . . .")], and tie them together with a threadbare facts. The facts presently before me appear to be little more than a run-of-the-mill foreclosure proceeding with an ample helping of legal jargon.

  The Seventh Circuit has explained that dismissing an action under 28 U.S.C. § 1915(e)(2) "without leave to amend" may raise "serious questions about fair access to the courts," because "an IFP applicant's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest, or simply request leave to amend." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013); *accord Frey v. EPA*, 270 F.3d 1129, 1131–32 (7th Cir. 2001) (in case where plaintiffs paid the filing fee: "We have warned that *sua sponte* dismissals without prior notice or opportunity to be heard are hazardous and that unless the defect is clearly incurable a district court should grant the plaintiff leave to amend[.]") (internal quotations omitted).

  In keeping with this guidance, Porter will be granted an opportunity to amend his complaint to allege *facts* that form a basis for his legal claims, rather than boilerplate legal conclusions and labels. For example, Porter may choose to separate the facts

forming the basis for the complaint in a single section with numbered paragraphs, laying out the timeline of what happened to him and what role each of the defendants played in the events causing his alleged injuries. Separating the underlying facts from the legal causes of action may streamline the process by avoiding unnecessary labeling of facts to fit neatly into the elements of various legal claims, and aid in the Court's understanding of the facts forming the basis for each legal claim. In any case, the amended complaint must tell me in plain language what happened to Porter and who did it, and how that forms a basis for a claim under the law. Finally, Porter is again reminded that to the extent the purpose of this lawsuit is the review of the state court's judgment and decree of foreclosure, I lack jurisdiction to review that order. Any claims, however styled, that "effectively seek review of an adverse state-court judgment" are barred by the *Rooker-Feldman* doctrine. *Abatangelo*, 719 Fed. App'x at 522.

**ACCORDINGLY:**

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff Reginald Darnell Porter's complaint [DE 1] is **DISMISSED WITHOUT PREJUDICE**, for failure to state a claim on which relief may be granted. Porter is **ORDERED** to file an amended complaint on or before **March 18, 2024**. If he fails to do so, this case will be dismissed with prejudice.

**SO ORDERED**.

ENTERED: February 16, 2024.

                                                   /s/ Philip P. Simon  
                                                   PHILIP P. SIMON, JUDGE  
                                                   UNITED STATES DISTRICT COURT